890 F.2d 417
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leroy SCOTT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-5514.
 United States Court of Appeals, Sixth Circuit.
 Dec. 1, 1989.
 
 Before BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Leroy Scott appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of his claim for a period of disability, disability insurance benefits, and supplemental security income under sections 216(i) and 223 of the Social Security Act as amended. For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed his application for disability insurance benefits and supplemental security income on June 3, 1986, alleging that he became disabled and unable to work on April 24, 1986 due to hypertension, diabetes, obesity, chronic obstructive pulmonary disease, cardiac difficulties, arthritis and a borderline personality disorder. The Secretary denied claimant's applications on October 30, 1986. Upon reconsideration the Secretary again denied claimant's applications on May 19, 1987. Dissatisfied with the Secretary's determination, the claimant requested a hearing before an Administrative Law Judge (ALJ). This hearing was held on September 9, 1987.
 
 
 3
 On January 28, 1988, the ALJ issued his decision denying benefits to the claimant. The Appeals Council concurred with the ALJ's decision and denied Scott's request for review on May 10, 1988, making the ALJ's decision the final decision of the Secretary. Claimant appealed to the district court. On March 7, 1989, the United States Magistrate issued a Report and Recommendation proposing that the Secretary's decision denying appellant's claims be upheld. On March 24, 1989, the district court issued an Order accepting the Magistrate's Report and Recommendation in its entirety. Claimant thereafter filed this timely appeal.
 
 
 4
 The following evidence was introduced at the September 9, 1987 hearing.
 
 
 5
 Claimant was born on July 20, 1946, and was 39 years old when he applied for disability insurance benefits and supplemental security income on June 3, 1986. He completed the seventh grade and is literate. Claimant previously worked as a truck driver, welder and laborer. Scott last worked in April, 1986, alleging disability beginning April 24, 1986 due to hypertension, diabetes, obesity, chronic obstructive pulmonary disease, cardiac difficulties, peptic ulcer disease, arthritis and a borderline personality disorder.
 
 
 6
 Claimant's pertinent medical history includes a treadmill test conducted in June, 1983. No ischemic changes were noted, an echocardiogram was normal, and only isolated premature ventricular contractions were found. Almost three years later, in April, 1986, claimant complained of headaches, stomach pains, dizziness and lack of energy. Doctors determined that claimant weighed 287 pounds (he is approximately five-feet eight-inches tall), and had smoked approximately one pack of cigarettes per day for over twenty years. An electrocardiogram done on Scott indicated normal heart activity.
 
 
 7
 The claimant was hospitalized from May 5 to May 10, 1986 following a fall at work. An electrocardiogram was within normal limits, an upper gastrointestinal series tested normal, and a scan of the claimant's brain indicated moderate cortical atrophy with no mass or enhancing lesions noted. Claimant was diagnosed as having hematoma of the abdomen, hypertensive cardiovascular disease, exogenous obesity, diabetes mellitus type II, generalized osteoarthritis, and possible psychoneurotic disease.
 
 
 8
 Scott was seen by a psychologist in September, 1986. The psychologist discounted schizophrenia and psychosis, suggesting instead that claimant suffered from a dysthymic disorder and borderline personality. The psychologist further found the claimant to be evasive, resistant and oppositional throughout the consultation, adding that the claimant appeared to exaggerate his physical condition. The psychologist did not mention any mental limitations that would affect the claimant's ability to work.
 
 
 9
 The claimant was again hospitalized in early December, 1986. He was diagnosed with multifocal premature ventricular contractions secondary to hypertensive cardiovascular disease and hypokalemia. He was further diagnosed with exertional chest pain with possible angina, type II diabetes, a history of peptic ulcers, and arthritis. The claimant was found to be at risk for a myocardial infarction and was instructed to follow a suggested diet and to quit smoking.
 
 
 10
 On January 26, 1987, Dr. Diane Petrilla, Scott's treating physician, noted that the claimant was disabled from exertional job related activities due to significant risk factors for coronary artery disease, adding that the claimant should be considered to be completely disabled until further examination. The claimant was again hospitalized in March, 1987 for chest pains. Physical examination of the heart was normal. An electrocardiogram revealed no evidence of a myocardial infarction. An x-ray of the lungs, heart and mediastinum was normal. Scott's blood pressure was 144/98, he weighed 304 pounds and still smoked.
 
 
 11
 The claimant underwent a cardiac catheterization on April 3, 1987. The test revealed that the left main coronary artery was free of disease while the right coronary artery showed mild to moderate diffuse ectasia. The treating physician indicated that the test showed no evidence of significant coronary artery stenosis with normal left ventricular function. Scott's blood pressure was 140/80 and a chest x-ray revealed no active cardiopulmonary disease.
 
 
 12
 On April 22, 1987, Dr. Petrilla reported that the claimant's weight was down, blood pressure was down to 108/74 and that Scott was no longer having chest pains. Because the catheterization was normal, the doctor strongly encouraged the claimant to begin a regular exercise program and did not reiterate her opinion that claimant was completely disabled.
 
 
 13
 At the September 9, 1987 hearing before the ALJ, claimant testified to persistent coughing, wheezing and chest pain, adding that he does not drive, fish, or help his wife with the chores around the house and yard. Claimant stated, however, that he attended church regularly until December, 1986, and that he is still able to read the Bible. A psychologist, after examining claimant's record, identified claimant's mental impairment as only a mild dysthymic disorder with somatization features, adding that these conditions are not listed impairments and are not severe. The psychologist concluded that the nature of Scott's psychological data suggests symptom exaggeration and that objective data, rather than the claimant's subjective statements, be used to assess the claimant's physical impairments.
 
 
 14
 Based on the evidence in the record, including claimant's previous work experience and his physical and mental condition, a vocational expert testified that 2500 5000 unskilled sedentary jobs suitable for the claimant (not performed around fumes or in temperature extremes) existed in the regional economy. The vocational expert specifically listed numerous low-level exertion sedentary jobs available to the appellant including a grader, sorter, production inspector, atomizer assembler and lock assembler.
 
 
 15
 Claimant argues that the Secretary's finding that he had the residual functional capacity to perform sedentary work after April 24, 1986 is not supported by substantial evidence. Specifically, claimant challenges the finding that his allegation of impairment due to the combined effects of medical and personality disorders, resulting in a marked limitation of functional capacity, was not supported by objective evidence.
 
 II.
 A.
 
 16
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 
 17
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Secs. 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. Secs. 404.1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. Secs. 404.1520(c), 416.920(c).
 
 
 18
 If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. Secs. 404.1520(d), 416.920(d). See 20 C.F.R. Secs. 404.1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Price did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. Secs. 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). In the instant case the ALJ found that Price was not capable of returning to his particular occupation.
 
 
 19
 At this step in the analysis it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. 20 C.F.R. Secs. 404.1520(f)(1), 416.920(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. Pt. 404, Subpt. P., App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, then the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case the ALJ determined that claimant's characteristics resembled the characteristics found in the residual functional capacity grid at Rule 202.21 suggesting no disability. 20 C.F.R. Pt. 404, Subpt. P., App. 2.
 
 B.
 
 20
 Claimant argues that the ALJ erroneously concluded that there was insufficient evidence to support a debilitating impairment arising from the combined effects of medical and personality disorders beginning October 19, 1984. We reject this argument.
 
 
 21
 The ALJ, in his January 28, 1988 Decision, held:
 
 
 22
 The clinical data fails to establish the presence of any impairment or combination of impairments so severe as to produce the symptoms alleged. Interviewers at the local social security office have observed no sign of disability and the claimant has repeatedly been described as being in no acute distress while undergoing medical examinations. [I am] aware of the current treating physician's opinion in January 1987 that the claimant was disabled. However, it is noted that this was based primarily upon suspected coronary artery disease which was later disproven by cardiac catheterization.... [I]nconsistencies [in claimant's testimony] along with the claimant's demeanor during psychological evaluation, his obvious exaggeration of physical complaints, suspected malingering and eagerness to gain disability status, as evidenced by his self-report to mental health clinic personnel, do nothing to enhance credibility. Mr. Scott reported that he had worked very little during the month prior to the alleged onset date although he apparently was not receiving medical attention and he has a rather sporadic work pattern with no wages being posted for some years. Thus, motivation may be a factor in this case.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 With respect to residual functional capacity, the record fails to establish the inability to engage in at least unskilled sedentary work not involving exposure to dust, fumes, or temperature extremes.... Based upon an exertional capacity for at least sustained sedentary work along with his vocational factors, the medical vocational guidelines contained in App. 2 of Subpart P, Regulations No. 4 as a framework suggest a finding of "not disabled."
 
 
 26
 Claimant contends that he cannot perform even sedentary work. Sedentary work involves lifting and carrying small items including files, ledgers and tools weighing no more than ten pounds. A sedentary job entails much sitting with occasional standing and walking. 20 C.F.R. Sec. 404.1567(a). The record contains substantial medical evidence to support the ALJ's finding that the claimant can perform sedentary work despite his impairments.
 
 
 27
 Although claimant has been diagnosed with arthritis and peptic ulcer disease, the record contains no objective evidence of a musculoskeletal or gastrointestinal problem that would cause any work-related functional limitation. Claimant's diabetes is controlled with diet and medicine. The cardiac catheterization done on the claimant indicated no coronary artery disease. Furthermore, the record indicates that claimant's mild obstructive pulmonary disease would not interfere with his performing sedentary work. Similarly, claimant's hypertension does not preclude him from performing the minimal exertional requirements of sedentary work.
 
 
 28
 Although the Secretary recognizes that obesity can be disabling, see 20 C.F.R. Part 404, Subpt. P., App. 1, Sec. 10.10, the claimant has not alleged that he qualifies. Furthermore, although Scott's weight periodically exceeded the applicable minimum weight requirement (302 pounds) set forth in Sec. 10.10, Table I, he failed to qualify pursuant to Sec. 10.10(A)-(E).
 
 
 29
 The claimant also complained of shortness of breath and chest pain. This court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). To support such a claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition, or that the objectively established medical condition is of such severity that it can reasonably be expected to produce disabling pain. Id. In applying this standard the reviewing court should show deference to the decision of the administrative law judge in assessing credibility. Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 108 S.Ct. 1050 (1988). In light of the normal cardiac catheterization, the pulmonary function study showing a mild pulmonary impairment, the treating physician's reports of clear lungs, and claimant's lowered blood pressure readings, the claimant's complaints of severe chest pain and shortness of breath were properly rejected. Though claimant alleged fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, his personal observations, and the objective medical evidence contradict.
 
 
 30
 The claimant further alleges that he suffers from a severe mental impairment. Before a mental impairment precludes the use of the medical-vocational guidelines, the mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level. Buress v. Secretary of Health & Human Servs., 835 F.2d 139, 142 (6th Cir.1987). To establish that a mental disorder reaches the level of severity to be considered disabling, a claimant must satisfy the documentation requirements of 20 C.F.R. Pt. 404, Subpt. P., App. 1, Sec. 12.00(B): "The existence of a medically determinable impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." Claimant has provided insufficient medically documented evidence to support this claim.
 
 
 31
 Finally, the claimant maintains that the ALJ failed to consider all of the claimant's impairments in combination. This claim is without merit. The ALJ considered all of the claimant's impairments in combination and concluded that these impairments did not preclude the claimant from performing sedentary work in a temperature controlled environment free of excessive fumes. The ALJ specifically stated that he considered the claimant's impairments in combination. Such statements are sufficient to show that the ALJ considered the combined effect of the claimant's impairments. Gooch, 833 F.2d at 591-92.
 
 
 32
 Because the ALJ's determination that the claimant retained the ability to perform available sedentary work is supported by substantial evidence, the judgment of the district court is AFFIRMED.